**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

MORGAN T. ZURN
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

March 11, 2021

Garrett B. Moritz, Esquire
Elizabeth M. Taylor, Esquire
Ross Aronstam & Moritz LLP
100 South West Street, Suite 400
Wilmington, Delaware 19801

Michael A. Barlow, Esquire
Adam K. Schulman, Esquire
Abrams & Bayliss LLP
20 Montchanin Road, Suite 200
Wilmington, Delaware 19807

RE:   ***Tetragon Financial Group Limited v. Ripple Labs Inc.,***
C.A. No. 2021-0007-MTZ

Dear Counsel:

In this expedited contractual dispute, Plaintiff Tetragon Financial Group Limited ("Tetragon" or "Plaintiff") has applied for certification of an interlocutory appeal (the "Application")[1] from this Court's March 5 oral ruling and written order (collectively, the "Ruling").[2] The Ruling denied Tetragon's motion for preliminary injunction, concluding that Tetragon was not reasonably likely to prevail on the merits at trial.[3] For the following reasons, I deny Tetragon's Application.

---

[1] Docket Item ("D.I.") 120.

[2] *See* D.I. 119; *see also* D.I. 128. The transcript of the Ruling has been finalized and distributed to the parties, but not yet posted to the docket. This letter cites that transcript as "PI Ruling."

[3] PI Ruling 9:17–21.

## I.     BACKGROUND

On January 4, 2021, Tetragon filed its complaint in this action, seeking, among other things, a declaration that certain actions by the U.S. Securities and Exchange Commission (the "SEC") triggered the "Securities Default" provision in a contractual agreement (the "Stockholders' Agreement") between Tetragon and defendant Ripple Labs, Inc. ("Ripple" or "Defendant").[4]     Section 5.4 of the Stockholders' Agreement defines a Security Default as follows:

> A 'Securities Default' means if XRP is determined on an official basis (including without limitation by settlement) by the U.S. Securities and Exchange Commission (or (1) another governmental authority or (2) a governmental agency of similar stature and standing) to constitute a security on a current and going forward basis (and not, for the avoidance of doubt, a determination that XRP was a security in the past).[5]

Tetragon contends each of two events constitutes a Securities Default:  an October 2020 "Wells Notice" from the SEC, and a December 2020 enforcement action the SEC filed in the U.S. District Court for the Southern District of New York.[6]

In addition to a declaration that a Securities Default occurred, Tetragon sought specific performance of its redemption right.[7]   Under the Stockholders'

---

[4] *See generally* D.I. 1 [hereinafter "Compl."].

[5] Compl. Ex. A [hereinafter "Stockholders' Agr.] § 5.4.

[6] *Id.* ¶ A.

Agreement, Tetragon could demand redemption of its shares via a "Redemption Request" upon a Securities Default.[8]  Following receipt of a valid Redemption Request, the Stockholders' Agreement required Ripple to redeem Tetragon's shares within sixty days and apply all of its available cash and other assets to the redemption.[9]

Tetragon also moved for expedition and a temporary restraining order enjoining Ripple from using its assets for any purpose other than redemption of Tetragon's shares.[10]  I heard those motions on January 15,[11] and ordered expedition of the entire case, with a preliminary injunction hearing set for mid-February.[12]  I also entered a less burdensome temporary restraining order than Tetragon requested, which enjoined Ripple from making extraordinary, or "net negative," purchases of its cryptocurrency, XRP, outside the ordinary course of business.[13]

---

[7] Compl. ¶ B.

[8] Stockholders' Agr. § 5.1.

[9] *Id.*

[10] *See* D.I. 1.

[11] *See* D.I. 21.

[12] D.I. 85 [hereinafter "TRO Ruling"] 58:19–59:10; D.I. 36 ¶ 1.

[13] TRO Ruling 58:1–11; D.I. 36 ¶¶ 2–3.

The parties conducted fact and expert discovery, and briefed their positions on the preliminary injunction.[14] The parties focused on whether the Wells Notice and enforcement action constituted a Securities Default as defined by the Shareholders' Agreement. I heard argument on the preliminary injunction on February 17.

On March 5, I delivered my Ruling, denying Tetragon's motion for a preliminary injunction.[15] I found that Tetragon was not reasonably likely to prevail on the merits because neither the Wells Notice nor the enforcement action constituted a Securities Default pursuant to the plain language of the Shareholders' Agreement.[16] I also vacated the temporary restraining order.[17]

Tetragon filed its Application for certification of an interlocutory appeal on March 8, requesting that this Court allow the Supreme Court to review the meaning and application of the Securities Default provision. Tetragon also moved for expedited consideration of the Application,[18] which I granted on March 8.[19] On

---

[14] *See* D.I. 94; D.I. 95; D.I. 103; D.I. 105.

[15] *See* D.I. 119; *see also* PI Ruling.

[16] PI Ruling 9:17–21.

[17] *Id.* 27:1–3.

[18] D.I. 120.

[19] D.I. 124.

March 9, Ripple opposed the Application[20] and moved for summary judgment;[21] that motion remains pending. Trial in this matter is scheduled for March 25 and 26.[22] For the reasons I will explain, I recommend against certifying Tetragon's question of contractual interpretation for interlocutory appeal.

## II.    ANALYSIS

Supreme Court Rule 42(b)(i) states that interlocutory appeals shall not be certified "unless the order of the trial court decides a substantial issue of material importance that merits appellate review before a final judgment."[23] "Applications for interlocutory appeals are addressed to the sound discretion of this Court and are accepted only in extraordinary circumstances,"[24] as "they disrupt the normal procession of litigation, cause delay, and can threaten to exhaust scarce party and judicial resources."[25] When deciding whether to certify such an appeal, the Court should consider whether:

---

[20] D.I. 125.

[21] D.I. 127.

[22] *See* D.I. 116.

[23] Supr. Ct. R. 42(b)(i).

[24] *Robino-Bay Ct. Plaza, LLC v. W. Willow-Bay Ct.*, *LLC*, 941 A.2d 1019 (Del. 2007) (TABLE). Though this decision referred to the Supreme Court in its use of "this Court," trial courts exercise that same discretion in recommending whether interlocutory appeals should be certified.

[25] Supr. Ct. R. 42(b)(ii).

> (A) The interlocutory order involves a question of law resolved for the first time in this State; (B) The decisions of the trial courts are conflicting upon the question of law; (C) The question of law relates to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order; (D) The interlocutory order has sustained the controverted jurisdiction of the trial court; (E) The interlocutory order has reversed or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice; (F) The interlocutory order has vacated or opened a judgment of the trial court; (G) Review of the interlocutory order may terminate the litigation; or (H) Review of the interlocutory order may serve considerations of justice.[26]

Once the Court considers these factors and conducts its "own assessment of the most efficient and just schedule to resolve the case," the Court must then consider whether the likely benefits of interlocutory review outweigh the likely costs.[27] "If the balance is uncertain, the trial court should refuse to certify the interlocutory appeal."[28]

Here, this Court's order denying Tetragon's preliminary injunction motion does not present any "substantial issue of material importance that merits appellate

---

[26] Supr. Ct. R. 42(b)(iii).

[27] *Id.*

[28] *Id.*

review before final judgment."[29]  This Court has held that "[a]s a general matter, issues of contract interpretation are not worthy of interlocutory appeal."[30]  Even where a decision of the Court may dispose of a count in its entirety, that "does not necessarily create a 'substantial issue of material importance.'"[31]  "Standard contract interpretation issues are not suited for interlocutory appeal."[32]  Simply put, when the issue raised in an application deals with "this Court's construction of discrete provisions of the [contract]," the issue "do[es] not meet any Rule 42(b)(iii) criteria and [is] not fit for interlocutory appeal."[33]

---

[29] Supr. Ct. R. 42(b)(i).

[30] *REJV5 AWH Orlando, LLC v. AWH Orlando Member, LLC*, 2018 WL 1109650, at *3 (Del. Ch. Feb. 28, 2018); *see also Lexington Ins. Co. v. Almah LLC*, 167 A.3d 499 (Del. 2016) (TABLE) (denying interlocutory appeal upon noting the "dispute turn[s] on issues of contract interpretation"); *Renco Gp., Inc. v. MacAndrews AMG Hldgs. LLC*, 2015 WL 1830476, at *2 n.3 (Del. Ch. Apr. 20, 2015) ("The Court's contract interpretation, even if wrong, would not seem to warrant interlocutory appeal.").

[31] *Thomas v. Headlands Tech Principal Hldgs., L.P.*, 2020 WL 6112302, at *2 (Del. Super. Ct. Oct. 16, 2020) (citing *McKnight v. USAA Cas. Ins. Co.*, 872 A.2d 959 (Del. 2005) (TABLE) (affirming the trial court's refusal to certify an interlocutory appeal because "while the particular exclusion at issue ha[d] not previously been interpreted in Delaware, the trial court applied well-established principles of contract interpretation and thus the case did not involve a matter of first impression")).

[32] *Realogy Hldgs. Corp. v. SIRVA Worldwide*, 2020 WL 4559519, at *10 (Del. Ch. Aug. 7, 2020).

[33] *REJV5 AWH Orlando*, 2018 WL 1109650, at *3.

As Tetragon acknowledges, the issue of law this Court decided in denying the preliminary injunction involves the "meaning of the parties' contract."[34] Tetragon's preliminary injunction motion required that I interpret the unambiguous language of the Shareholders' Agreement to determine whether a Securities Default had occurred. Even if a dispute over contractual language could justify an interlocutory appeal, Tetragon's Application does not identify any particular aspect of the Court's interpretation that was erroneous, much less a specific error on a substantial issue of material importance. Because Tetragon raises no requisite substantial issue of material importance, interlocutory review is not in the interests of justice.

The fact that the Application deals only with "a mere contract dispute" "might end [the analysis] there."[35] For completeness, I will consider the factors laid out in Supreme Court Rule 42(b)(iii). Tetragon addresses only subsection (H) of that Rule in its Application, arguing that review of the interlocutory order may serve considerations of justice.[36] Tetragon states that, if it is correct on the merits, then it is losing the value of protective rights each day, a loss which may not be

---

[34] D.I. 120 ¶ 16.

[35] *Steadfast Ins. Co. v. DBi Servs., LLC*, 2019 WL 3337127, at *2 (Del. Super. Ct. July 25, 2019) (denying application for interlocutory appeal).

[36] D.I. 120 ¶ 16.

compensated with money.[37]   When considered in light of this case's current disposition, this factor is in equipoise.   Ripple's summary judgment motion presents an opportunity for an expeditious final judgment; even if that motion is denied, trial is just two weeks away, and the Court is committed to providing a meaningfully expedited response.  As such, Tetragon has not shown that there is "'particular urgency to litigating the issue before a final judgment' is entered,"[38] especially as it has acknowledged Ripple's sizable cash balance.[39]   With trial quickly approaching, the costs and inefficiencies associated with disrupting this case's timeline, particularly when an appeal on a final judgment would be more appropriate for this contractual interpretation dispute, outweigh the potential benefits Tetragon asserts.[40]

---

[37] *Id.* ¶¶ 16–17.

[38] *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2021 WL 164930, at *5 (Del. Super. Ct. Jan. 19, 2021) (quoting *In re Shawe & Elting LLC*, 131 A.3d 325 (Del. 2016) (TABLE)).

[39] D.I. 94 ¶ 6.

[40] *See, e.g., Ferrellgas P'rs L.P. v. Zurich Am. Ins. Co.*, 2020 WL 5579335, at *4 (Del. Super. Ct. Sep. 17, 2020) (finding factor (H) has no application where "review at this time would result in all of the ills that Rule 42(b)(ii) warns against: disruption of the normal process of litigation, delay, and exhaustion of scarce party and judicial resources (especially in the midst of the ongoing pandemic)").

Tetragon also strives to satisfy this catch-all factor by pointing out that the Ruling resolved the "core legal issue" in the case.[41] While true, that issue remains one of contractual interpretation that, as explained, is not suitable for interlocutory appeal. And Tetragon's observation that the Court has resolved the issue at the center of the case further supports an efficient and complete resolution of the entire case at the trial court level before pursuing an appeal.[42] Thus, this factor does not favor certification of an interlocutory appeal either.

None of the other Rule 42(b)(iii) factors support an interlocutory appeal in this instance. I take each remaining factor in turn.

A.      The interlocutory appeal does not involve a question of law resolved for the first time in Delaware, and Tetragon does not argue that it does. Rather, the issue is one of straightforward contract interpretation. This factor does not favor certification of an interlocutory appeal.

B.      Decisions of trial courts do not conflict on the issue resolved in the Ruling, and Tetragon does not argue that they do. This factor does not favor certification of an interlocutory appeal.

---

[41] D.I. 120 ¶ 14.

[42] *See Underwriters at Lloyds London v. Legion P'rs Asset Mgmt., LLC*, 242 A.3d 601 (Del. 2020) (TABLE).

C.     The question of law does not relate to the constitutionality, construction, or application of a statute of this State, which has not been, but should be, settled by this Court in advance of an appeal from a final order. Tetragon does not argue that it does. This factor does not favor certification of an interlocutory appeal.

D.     The Ruling does not sustain the controverted jurisdiction of this Court, and Tetragon does not argue that it does. This factor does not favor certification of an interlocutory appeal.

E.     The Ruling does not reverse or set aside a prior decision of the trial court, a jury, or an administrative agency from which an appeal was taken to the trial court which had decided a significant issue and a review of the interlocutory order may terminate the litigation, substantially reduce further litigation, or otherwise serve considerations of justice.  Tetragon does not argue that it does. This factor does not favor certification of an interlocutory appeal.

F.     The Ruling does not vacate or open a judgment of the trial court. Tetragon does not argue that it does.  This factor does not favor certification of an interlocutory appeal.

G.     Review of the Ruling will not terminate the litigation.  If interlocutory review results in a ruling more favorable to Tetragon, there is no indication that

litigation will end. Rather, the parties appear likely to proceed to trial. If interlocutory review does not result in a different outcome, Tetragon acknowledged in a March 8 letter to this Court that it will be prepared to move expeditiously to trial.[43] This factor does not favor certification of an interlocutory appeal.

Considering each factor in conjunction with Tetragon's threshold contract interpretation issue, the balance weighs against certifying interlocutory appeal.

## III. CONCLUSION

For the foregoing reasons, I recommend against Tetragon's Application. To the extent an order is required to implement this decision, **IT IS SO ORDERED.**

Sincerely,

*/s/ Morgan T. Zurn*

Vice Chancellor

MTZ/ms

cc: All Counsel of Record, via *File and ServeXpress*

---

[43] D.I. 123 at 2.